UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-cr-32-KDB-SCR-8

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HECTOR LOPEZ-GUTIERREZ, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendant's pro se Motions under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 297].

**I.  BACKGROUND**

The Defendant was charged with conspiracy to traffic 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One); unlawful possession of a firearm or ammunition by an illegal alien in violation of 18 U.S.C. § 922(g)(5) (Counts Three and Four); and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts Five and Six). [Doc. 100 (Indictment)]. The Defendant pleaded guilty to Count One in exchange for the Government's dismissal of the remaining counts. [Doc. 121 at ¶¶ 1-2 (Plea Agreement)].

The Plea Agreement sets forth the statutory minimum and maximum sentences as follows: if the Court finds at sentencing that the conspiracy involved at least 500 grams of methamphetamine, not less than 10 years nor more than life imprisonment, and/or a $4,000,000 fine, and a term of supervised release; if the Court finds that the offense involved at least 50 grams of methamphetamine, not less than five years nor more than 40 years' imprisonment, and/or a

$2,000,000 fine, and a term of supervised release; and if the Court does not find that the conspiracy involved at least 50 grams of methamphetamine, a sentence of not more than 20 years' imprisonment and/or a $1,000,000 fine and a term of supervised release. [Id. at ¶ 4]. The parties reserved their right to contest the amount of methamphetamine that was known to or reasonably foreseeable by the Defendant at sentencing, and to seek a departure or variance from the applicable guideline range. [Id. at ¶ 7]. The parties agreed to jointly recommend that: the plea is timely for purposes of acceptance of responsibility; the Government will not object if the Probation Office does not recommend a role enhancement in the pre-sentence report ("PSR"), or a two-level increase for an offense involving methamphetamine importation pursuant to U.S.S.G. § 2D1.1(b)(4); and the Government will not oppose a sentence at the bottom of the applicable guideline range. [Id.].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Defendant would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 6].

The Defendant stipulated that factual basis for the guilty plea exists and that the Court may use the offense conduct used in the PSR, except as to any facts to which the Defendant has objected, to establish a factual basis for the plea; the factual basis was deferred until sentencing. [Id. at 14].

The Plea Agreement sets forth the rights Defendant was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be

2

tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 15-17]. The Plea Agreement acknowledges that Defendant had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 18-19]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 25].

On February 16, 2011, a Rule 11 hearing came before a United States magistrate judge. See [Doc. 235 (Plea Hearing Transcript)]. The Defendant stated under oath, with the assistance of an interpreter, that he received a copy of the Indictment, discussed it with counsel, and understood the charge to which he was pleading guilty as well as the maximum penalties that could apply to him. [Id. at 4-6]. Defendant agreed that: he understood that pleading guilty may cause him to be deprived of certain rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Defendant has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 7-8, 11-13]. Defendant acknowledged the rights he was waiving by pleading guilty. [Id. at 9].

The Plea Agreement was summarized in open court. [Id. at 9-12]. The Defendant confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id.]. The Defendant stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of

3

leniency or a light sentence to induce him to plead guilty. [Id. at 13]. He stated that he had enough time to discuss any possible defenses with his lawyer and that he was satisfied with counsel's services. [Id.].

The PSR includes a lengthy description of the offense conduct. [Doc. 182 at ¶¶ 6-24 (PSR)]. The PSR calculated the base offense level as 38 because the offense is a violation of 18 U.S.C. § 841 and the Defendant was responsible for 8.3 kilograms of actual methamphetamine. [Id. at ¶ 31]. Two levels were added because the Defendant possessed a firearm during the course of the conspiracy. [Id. at ¶ 32]. No enhancement was applied for importing methamphetamine from Mexico. [Id. at ¶ 33]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 37. [Id. at ¶¶ 39-40]. The Defendant had one criminal history point and a criminal history category of I. [Id. at ¶ 45]. The resulting advisory guideline range was 210 to 262 months' imprisonment and at least five years of supervised release. [Id. at ¶¶ 58, 60-61].

A sentencing hearing came before the Court on March 5, 2012.[1] [Doc. 236 (Sentencing Hearing Transcript)]. The Defendant confirmed that his guilty plea was voluntarily entered, that he was fully satisfied with counsel's services, that he committed the offense to which he pleaded guilty, and that he had received a copy of the PSR and reviewed it with counsel. [Id. at 2-3]. Counsel objected to the amount of actual methamphetamine that was attributed to the Defendant in the PSR and to the enhancement for possession of a firearm, and argued that the Defendant should receive a mitigating role reduction and that he should benefit from the safety valve. [Id. at 4-7]. After hearing testimony and arguments, the Court overruled the Defendant's objections and found that the advisory guideline range had been correctly calculated. [Id. at 46-48]. Defense counsel presented argument and testimony regarding the Defendant's history and characteristics,

---

[1] At that time, the case was assigned to the Honorable Richard L. Voorhees. The case was reassigned to the undersigned in November 2019.

4

and the Defendant expressed remorse and requested leniency. [Id. at 53-54]. The Government argued that no downward variance was warranted and that the Defendant should be sentenced at the bottom of the advisory guideline range. [Id. at 56]. The Court imposed a sentence at the bottom of the guidelines of 210 months' imprisonment followed by five years of supervised release. [Id. at 59-60; Doc. 221 (Judgment)].

On direct appeal, counsel filed an Anders[2] brief stating that there are no meritorious grounds for appeal but questioning whether the Court erred when it calculated Defendant's guideline range and whether the sentence is substantively reasonable. The Defendant filed a supplemental *pro se* brief challenging the voluntariness of his guilty plea and the Court's calculation of the guideline range. The Fourth Circuit Court of Appeals affirmed on December 21, 2012, finding that the plea was knowingly and voluntarily entered; that the sentence procedurally and substantively reasonable; and that the record contained no meritorious appellate issues. United States v. Lopez-Gutierrez, 501 F.App'x 263 (4th Cir. 2012).

The Defendant filed a *pro se* § 2255 Motion to Vacate in 2013 in which he argued that trial and appellate counsel performed ineffectively, and that the Court lacked jurisdiction to sentence him. The Court dismissed and denied the Motion to Vacate on the merits. Lopez-Gutierrez v. United States, 2015 WL 4388603 (W.D.N.C. July 15, 2015).

The Defendant subsequently moved for sentence reductions, which were denied. [See Docs. 255, 295].

The Defendant filed the instant § 2255 Motion to Vacate on September 17, 2024.[3] [Doc. 297 at 54]. He argues that § 922(g)(1) and § 924(a)(2) are unconstitutional facially and applied to

---

[2] Anders v. California, 386 U.S. 738 (1967).

[3] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C.A. foll. § 2255 (addressing inmate filings).

5

him, pursuant to N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), and "ineffective assistance of counsel." [Doc. 297 at 5, 14-54]. He argues that his Motion to Vacate is timely pursuant to § 2255(f)(4) because "[n]ew information (framework)." [Id. at 10, 13]. He requests a hearing. [Id. at 54]. The Court concludes that it does not require a response from the Government to resolve this matter.

## II.     STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings ..." in order to determine whether the Defendant is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

When an initial motion pursuant to § 2255 has been adjudicated on the merits, a second or successive motion under the statute must be certified by the court of appeals before it may be filed with this Court. 28 U.S.C. § 2255(h). To certify a second or successive § 2255 motion for filing with this Court, the court of appeals must find that the motion contains either: "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be

6

sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id.

The instant Motion to Vacate is an unauthorized second or successive § 2255 petition. The Defendant has already filed a § 2255 petition which the Court denied on the merits. See Lopez-Gutierrez, 2015 WL 4388603. The Defendant does not state that he has received authorization from the Fourth Circuit to file a second or successive § 2255 petition and a review of the Fourth Circuit's docket reveals none.

The Defendant's reliance on Bruen and its progeny is unavailing. In Bruen, the Supreme Court did not hold that § 922(g)(1) is unconstitutional, nor has the Supreme Court made such a right retroactively applicable.[4] See generally Tyler v. Cain, 533 U.S. 656, 663 (2001) ("a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive); see United States v. Carson, No. 1:23-cv-58, 2024 WL 500728, at *2 (W.D.N.C. Feb. 8, 2024) (collecting cases). Even if Bruen were a retroactive change in constitutional law as contemplated in § 2255(h), the Defendant would still have to obtain the Fourth Circuit's authorization before filing a second or successive petition in this Court. See 28 U.S.C. § 2255(h); United States v. Winestock, 340 F.3d 200, 205 (4th Cir. 2003), *abrogated on other grounds by* United States v. McRae, 793 F.3d 392 (4th Cir. 2015). Liberally construing the Motion to Vacate as a § 2241 petition would be unavailing because developments in the case law such as Bruen do not render § 2255 "inadequate or ineffective" under the savings clause in § 2255(e). See Jones v. Hendrix, 599 U.S. 465 (2023) ("§ 2255(e)'s savings clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent [the Antiterrorism and Effective Death

---

[4] The Defendant's reliance on Bruen is misguided because the Defendant pleaded guilty to a methamphetamine trafficking conspiracy, and not to violating § 922(g).

7

Penalty Act of 1996's] restrictions on second or successive § 2255 motions by filing a § 2241 petition"); see, e.g., Williams v. Hudgins, 2023 WL 4929310 (4th Cir. Aug. 2, 2023) (affirming the dismissal of prisoner's § 2241 petition in which he sought to challenge his § 922(g)(1) conviction under Rehaif v. United States, 588 U.S. 225 (2019) by way of the savings clause in § 2255(e)).

Accordingly, the instant § 2255 Motion to Vacate is dismissed as an unauthorized second or successive § 2255 petition over which this Court lacks jurisdiction.[5]

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion to Vacate is dismissed for lack of jurisdiction.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 297] is **DISMISSED** as successive.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

---

[5] The Court, therefore, declines to address *inter alia* the timeliness of the Motion to Vacate or the merit of the Defendant's claims.

**IT IS SO ORDERED.**

Signed: September 27, 2024

Kenneth D. Bell
United States District Judge